# EXHIBIT A

# EXHIBIT A

# EXHIBIT A

Electronically Filed
7/27/2022 9:58 AM
Steven D. Grierson
CLERK OF THE COURT

1  BRUCE D. SCHUPP, ESQ.
   Nevada Bar No. 1458
2  LAW OFFICE OF BRUCE D. SCHUPP
3  1120 N. Town Center Drive, Suite 140
   Las Vegas, Nevada 89144
4  Telephone (702) 866-2400
   bruceschupp@me.com
5
6  BRICE J. CRAFTON, ESQ.
   Nevada Bar No. 010558
7  DEAVER & CRAFTON
   810 E. Charleston Blvd.
8  Las Vegas, Nevada 89104
   brice@deavercrafton.com
9
10 ROBERT D. VANNAH, ESQ.
   Nevada Bar No. 002503
11 JOHN B. GREENE, ESQ.
   Nevada Bar No. 004279
12 400 South Seventh Street, Fourth Floor
   Las Vegas, Nevada 89101
13 jgreene@vannahlaw.com
   *Attorneys for Plaintiff*
14

CASE NO: A-22-855987-C
Department 26

15           **EIGHTH JUDICIAL DISTRICT COURT**

16              **CLARK COUNTY, NEVADA**

17 ASHLEY WINN,                        CASE NO.:
                                       DEPT NO.:
18              Plaintiff,

19 vs.

20 SHELTER MUTUAL INSURANCE            **COMPLAINT**
   COMPANY; STATE FARM MUTUAL
21 AUTOMOBILE INSURANCE COMPANY; and,
   DOES I through X, and ROE Corporations I
22 through X, inclusive,

23              Defendants.

24

25

26                                     RECEIVED
27                                     AUG 0 3 2022
28                                     DIVISION OF INSURANCE
                                       STATE OF NEVADA

VANNAH & VANNAH
400 South Seventh St., 4th Floor· Las Vegas, Nevada 89101
Telephone (702) 369-4161   Facsimile (702) 369-0104

1

Plaintiff ASHLEY WINN (Plaintiff), by and through her attorneys, ROBERT D. VANNAH, ESQ., and JOHN B. GREENE, ESQ., of the law firm VANNAH & VANNAH, BRUCE D. SCHUPP, ESQ., of the LAW OFFICE OF BRUCE D. SCHUPP, and BRICE J. CRAFTON of the law firm of DEAVER & CRAFTON, hereby complains and alleges against Defendants as follows:

I.

## IDENTIFICATION OF THE PARTIES AND JURISDICTION

1.      Where applicable, all matters set forth herein are incorporated by reference in the various causes of action, which follow.

2.      At all times mentioned herein, Plaintiff ASHLEY WINN was, and is, a resident of the State of Nevada.

3.      Plaintiff is informed and believes, and thereon alleges, that Defendant SHELTER MUTUAL INSURANCE COMPANY (hereinafter "SHELTER") at all times herein mentioned, is an insurance company authorized to do business, and doing business in, the State of Nevada.

4.      Plaintiff is informed and believes, and thereon alleges, that Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY (hereinafter "STATE FARM") at all times herein mentioned, is an insurance company authorized to do business, and doing business in, the State of Nevada.  At times, SHELTER and STATE FARM are referred to as "Defendants."

5.      Plaintiff alleges that the DOE Defendant was and is liable to Plaintiff for nonpayment of benefits under her auto liability policy of insurance; and/or for their failure to inform Plaintiff, pursuant to *Allstate v. Miller*, 125 Nev. 300, 212 P.3d 318 (2009), that claims under her bodily injury policies of insurance could be settled for an additional contribution of $20,000 by Plaintiff, which she would have paid had she been so informed by Defendants; and/or is responsible for the evaluation of bodily injury claims brought against her by various parties in the case of BRIAN CHOINIERE, an individual; JIM WEIR, an individual; DIANE WEIR, an individual; and Jim Weir, Diane Weir and Carol Weir-Spooner, as Special Administrators of the

2

ESTATE OF CHRISTINE THERESA WEIR (deceased) v. ASHLEY WINN, case number A-17-758089-C, the failure of which caused a judgment to be entered against Plaintiff on January 21, 2022, in the amount of $2,181,621.71.

6.   The true names of DOES 1 through 10 and ROE CORPORATIONS 1 through 10, their citizenship and capacities, whether individual, corporate, associate, partnership or otherwise, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names.   Plaintiff is informed and believes, and therefore alleges, that each of the Defendants, designated as DOES 1 through 10 and ROE CORPORATIONS 1 through 10, are or may be, legally responsible for the events referred to in this action, and caused damages to the Plaintiff, as herein alleged, and Plaintiff will ask leave of this Court to amend the Complaint to insert the true names and capacities of such Defendants, when the same have been ascertained, and to join them in this action, together with the proper charges and allegations.

7.      ROE CORPORATIONS 1 through 10 are insurance companies, casualty companies, corporations, or other business entities who wrote or participated in writing SHELTER claim number AT0000001726369 under policy number 27-1-3875917-2; and/or STATE FARM claim number 28-985F-624 under policy number 086384628C; and/or, who participated in the claim processing and/or handling of the claims for relief brought against Plaintiff in case number A-17-758089-C, as herein alleged.

8.      Plaintiff alleges that the ROE CORPORATION Defendants are liable to Plaintiff for the handling of, the non-payment of, and the failure to advise and counsel Plaintiff on the settlement terms of, claims and demands made against Plaintiff, as alleged.

## II.

## GENERAL ALLEGATIONS

9.   Plaintiff's claims arise out of an automobile accident that occurred on September 24, 2016 in Nye County, Nevada.  In a joint demand letter (the Demand) sent by Bruce D. Schupp, Esq.,

3

to representatives of Defendants on April 17, 2017, the Defendants were advised of the following facts: "On September 24, 2016, Brian Choiniere was traveling northbound on Dandelion Street near the intersection of Honeysuckle Street in Pahrump, Nevada. Ashley Winn was traveling westbound on Honeysuckle Street and failed to stop at a posted stop sign, wherein the front of the "Winn" vehicle collided with the passenger side of the "Choiniere" vehicle. The force of the impact caused both vehicles to rotate clockwise. The "Choiniere" vehicle ran off the roadway onto the asphalt parking lot of Deutch Memorial Park, with the left side of the vehicle striking a metal fence before coming to rest facing southwest."

10. The Demand further stated that: "Christine Weir, the front seat passenger in the "Choiniere" vehicle, was pronounced deceased at the scene. Brian Choiniere was airlifted from the scene to the University Medical Center Trauma in Las Vegas Nevada."

11. The Demand further stated that: "Following the subject traffic accident investigation, Ms. Winn was arrested for driving under the influence and failure to yield the right of way."

12. The Demand further stated that: "Upon arrival, Mr. Choiniere was evaluated in the trauma resuscitation unit. He was diagnosed with multiple rib fractures, right pneumothorax, T1 wedge deformity, right clavicle fracture, right ear laceration, left eyelid laceration, and left knee and shoulder abrasions. Due to the severity of his injuries, Mr. Choiniere was admitted to the trauma intensive care unit. Mr. Choiniere was released from the University Medical Center on September 27, 2016, but required a return visit."

13. The Demand listed Mr. Choiniere's medical providers of Pahrump Valley Fire & Rescue, Mercy Air Service, Inc., UMC Hospital, Desert Radiologists, University of Nevada School of Medicine, Capanna's Neuroscience, and Stuart Kaplan, M.D.; the Demand detailed dates of service from 9/24/2016 through 10/7/2016; the Demand set forth $128,300.48 in past medical specials; and, the Demand included copies of Mr. Choiniere's medical records and billings.

4

14. The Demand further stated that: "Christine Weir was pronounced deceased at the scene of the accident at the age of 33 years old. The coroner listed the cause of death as blunt force motor vehicle trauma." The Demand also included a copy of the death certificate.

15. The Demand further stated that: "Ms. Weir is survived by her mother, Diane Weir, and father, Jim Weir."

16. The Demand further stated that: "Shelter Insurance has represented that the bodily injury policy limits for Ms. Winn were $15,000/$30,000 on the date of the accident. State Farm Insurance Company has represented the bodily injury policy limits for the vehicle Ms. Winn was operating were $25,000/$50,000 on the date of the accident."

17. The Demand further stated that: "Based on the foregoing, demand is hereby made in the amount of $40,000 for the full and final settlement of Brian Choiniere's bodily injury claim."

18. The Demand further stated that: "Based on the foregoing, demand is hereby made in the amount of $40,000 for the full and final settlement of the claim of Christine Weir and the wrongful death claims of her surviving parents, Diane and Jim Weir."

19. The Demand further stated that: "Be advised this settlement offer shall expire at 5:00 p.m. pacific standard time on May 17, 2017. Acceptance must be in writing and received by my office by the aforesaid deadline. Your prompt response is invited."

20. On April 27, 2017, STATE FARM replied, stating: "This letter is in response to your demand of April 17, 2017. While I appreciate your provision of the additional medical records, I must confirm we had already extended a settlement offer to you on October 27, 2016. However, while our insured's liability limits are 25/50, as we discussed, we have denied liability coverage to Ashley Winn as she was a non-permissive user of our insured vehicle. Accordingly, in compliance with Nevada's absolute liability statute, NRS 485.3091, State Farm extended a settlement offer of $15,000 each for Brian Choiniere and Christine Weir's bodily injury claims." STATE FARM also required a release to be executed in exchange for the receipt of the funds.

5

21. On May 2, 2017, Mr. Schupp sent a joint letter to Defendants, which stated as follows: "Enclosed is a copy of State Farm's correspondence dated April 27, 2017, extending settlement offers of $15,000 each to my clients Brian Choiniere and the Estate of Christine Weir. My clients' original demands, as stated in their demand letter dated April 17, 2017, remain at $40,000. My office is extending the original demand deadline from May 17, 2017, up to and including May 31, 2017."

22. On May 11, 2017, STATE FARM replied, stating: "We have received your letter reiterating your demand of $40,000 to settle the bodily injury claim for Brian Choiniere and The Estate of Christine Weir. Your demand is a combined amount between Shelter Insurance and State Farm Insurance. While I appreciate your communication, we do not speak for Shelter Insurance, and have no control over what settlement they may offer. In regard to State Farm's settlement offer, I must confirm we stand on the settlement offer we had already extended to you on October 27, 2016. While our insured's liability limits are 25/50, as we discussed, State Farm has denied liability coverage. Ashley Winn was a non-permissive user of our insured vehicle. The limits of 25/50 thus do not apply. However, in compliance with Nevada's absolute liability statute, NRS 485.3091, State Farm extended a settlement offer of $15,000 each for Brian Choiniere and Christine Weir's bodily injury claims. This offer remains extended."

23. On May 15, 2027, Mr. Schupp wrote a letter to SHELTER, which stated: "I understand that you contacted my office regarding my correspondence dated May 2, 2017. To avoid any miscommunication, please forward any questions you may have in writing to my attention."

24. On May 16, 2017, SHELTER sent a reply letter to Mr. Schupp, stating: "In response to your May 15th letter, I did not have any questions for you. I left you a voicemail stating we are still offering our $15,000 limits."

25. At the time that the Demand was made to STATE FARM and to SHELTER, the Defendants had an affirmative obligation under Nevada law pursuant to *Allstate v. Miller*, 125 Nev.

6

300, 212 P.3d 318 (2009), to inform Plaintiff that claims under her bodily injury policies of insurance could be settled for an additional contribution of $20,000 by her.

26. In her sworn deposition testimony given on November 19, 2019, Plaintiff denied that she was a non-permissive driver of the vehicle insured by STATE FARM—having driven it 20-25 times before this accident and was given the keys to the truck just prior to the accident—and testified that she was never informed by either SHELTER or STATE FARM of the terms of the Demand, or that she could have contributed $20,000 to achieve a global resolution of the Demand and thus avoid litigation and an adverse judgment.

27. Prior to September 24, 2016, Plaintiff purchased a policy of liability insurance from SHELTER to cover bodily injuries sustained by others in the amount of $15,000 per claimant/$25,000 per accident.

28. Prior to September 24, 2016, the owner of the vehicle that Plaintiff was driving that was involved in the accident had purchased a policy of liability insurance from STATE FARM to cover bodily injuries sustained by others in the amount of $25,000 per claimant/$50,000 per accident. STATE FARM asserted that, at best, the liability coverage afforded to Plaintiff was $15,000 per claimant/$25,000 per accident.

29. On July 10, 2017, a civil complaint was filed against Plaintiff in the Eighth Judicial District Court, case number A-17-758089-C. The civil complaint brought several claims for relief against Plaintiff, including ones for Negligence, Recklessness, Willful and Wonton Misconduct, Wrongful Death, and Survivorship. The civil complaint sought damages in excess of $10,000, including punitive damages.

30. The jury trial of case number A-17-758089-C was set for the week of January 3, 2022. In the days leading up to the trial, preliminary discussions were held on submitting the claims of case number A-17-758089-C to binding arbitration, with a cap of $7,000,000. Plaintiff, through her personal counsel in case number A-17-758089-C, agreed to the proposed terms.

31. On December 31, 2021, counsel for the Plaintiffs in case number A-17-758089-C formally proposed via email to counsel retained by Defendants that all claims could be submitted to binding arbitration, with a cap of $7,000,000. Plaintiffs' co-counsel, Robert D. Vannah, also offered to agree to a covenant not to execute the judgment against Ms. Winn provided that STATE FARM and SHELTER agreed not to use the covenant as a defense in a future bad faith case. While counsel for STATE FARM agreed, SHELTER'S retained counsel, James Silvestri, Esq., rejected the proposed terms offered for the covenant not to execute, and stated: "...if, as Mr. Vannah has suggested, the covenant not to execute will not be issued...Shelter insurance will agree to a binding arbitration with a cap of $3,000,000...."

32. On December 31, 2021, Mr. Vannah replied to Mr. Silvestri as follows: "Just read this. No, Jim, this is not acceptable. The cap has to be $7,000,000. Ms. Winn and her counsel have agreed to this. Since Shelter doesn't think it has any obligation above $15,000, why do they resist their insured's efforts to minimize her risk?"

33. On December 31, 2021, Plaintiff's personal counsel in case number A-17-758089-C, Brice J. Crafton, Esq., sent an email to Mr. Silvestri, which stated as follows: "Jim, as personal counsel for your insured, Ashley Winn, I am very perplexed by your recent position on this proposed arbitration agreement. The big hang up was the admissibility of the proposed "covenant not to execute" that plaintiffs were offering to your insured. We rendered that moot by not requiring that "covenant" because even without it, it is in Ashley's best interests to be in arbitration with capped damages. Now, out of the blue, Shelter Insurance refuses to agree to the binding arbitration agreement unless the arbitration is reduced to $3 million from the agreed to $7 million. I agree that a potential $3 million dollar exposure to Ashley is obviously better than $7 million, but since plaintiffs are not willing to have a cap of $3 million, a $7 million dollar cap is acceptable in order to place this matter in binding arbitration and avoid the strong possibility of a jury verdict well in excess of that next week. The facts in this case are terrible for your insured. If you had informed

8

her of the offer to settle, as required by Nevada law, she would have come up with the excess funds to resolve this case; now she faces the real possibility of a judgment well in excess of $7 million. The cap is not an agreed to award. It is a limit on the potential judgment. If you agree to indemnify your insured for whatever the judgment will be, she has no problem with your position. Or, if you are offering payment of $3 million to the plaintiffs to resolve this entire matter… just make the offer. However, it seems to me that you are arbitrarily playing "Russian roulette" with my client's well-being, and the facts in this case clearly create the potential for a financial disaster next week. There is no doubt in my mind that Shelter Insurance is placing its interest at a much higher priority than the interest of its insured. We are requesting that you reconsider the binding arbitration agreement, and agree to it with a $7 million cap. Or, even better offer to pay the $3 million that you talk about to the plaintiffs and see if this whole case can be resolved. Apologies for sending this on the holiday but as we all know, we're at the 11th hour with trial starting in just two days. I look forward to your response. Best, Brice." SHELTER would not agree.

34. Again, on December 31, 2021, Mr. Crafton sent a second email to Mr. Silvestri as follows: "Jim, Happy New Year's Eve and thank you for your email this morning. Unless I am mistaken, it appears that the only sticking point here is regarding a covenant not to execute. In spite of this, it is still in Ashley's best interests to have this matter proceed to binding arbitration in order to cap her potential damages. Since all other proposed language/agreements seem to be acceptable, this matter should proceed to the binding arbitration without the covenant. Of course, Ashley's rights for bad faith, etc., will still be assigned to Mr. Vannah's client in the event an award in excess of the policy's/ies' occurs. Please let me know immediately if you are now agreeable to a binding arbitration in lieu of trial. As you know, today is Friday and the trial is to start on Monday. I look forward to your response. Best, Brice J. Crafton." SHELTER would not agree to the terms of a binding arbitration approved of and favored by their insured.

9

35. The trial of case number A-17-758089-C commenced, as scheduled, on January 3, 2022. Following the presentation of evidence, the jury returned a verdict against Ms. Winn in the amount of $1,955,811.22.

36. On January 21, 2022, the Court entered a Judgment against Ms. Winn in the total amount of $2,181,621.71.

37. On March 2, 2022, Mr. Vannah sent a letter to Mr. Silvestri, which stated as follows: "This case has now been tried and a judgment has been entered. The appeal time has expired. Therefore, we are demanding that Shelter Insurance pay its policy limits to our clients immediately, or tell us in writing why it refuses to do so. Of course, we will not be releasing your insured. However, the payment will obviously be an offset to what our clients are owed. Failure to pay the policy limits will leave us no recourse but to sue Shelter, and would certainly entitle us to fees and costs. I look forward to Shelter's written response. I am assuming that you still represent Shelter, and that is why I am not contacting it directly. Let me know if that is incorrect." On or about March 22, 20222, SHELTER tendered the policy limits, but nothing more.

38. On March 2, 2022, Mr. Schupp sent a letter to STATE FARM, which stated as follows: "By correspondence dated October 27, 2016, Paul Fitch authored correspondence representing that according to Nevada law, State Farm owed Brian Choiniere and the Estate of Christine Weir $15,000 each for their respective bodily injury claims. To date, State Farm has failed to make the aforementioned payments. As this matter has been tried, judgment entered, and the time for appeal has expired, demand is made for the payments immediately. Of course, my clients will not be executing releases in exchange for the funds. My office shall status your response for March 16, 2022." STATE FARM failed to respond to this letter.

39. On April 26, 2022, Mr. Schupp sent another letter to STATE FARM, which stated as follows: "On March 2, 2022, correspondence was forwarded to your attention demanding $15,000.00 on behalf of Brian Choiniere and the Estate of Christine Weir, each, from State Farm for

10

their respective claims arising out of the referenced date of loss.  To date, State Farm has failed to respond."

40. On April 28, 2022, nearly six years after STATE FARM acknowledged a legal responsibility to offer, as well as offered to pay, the statutorily mandated minimum policy limits of 15/30 pursuant to their conclusion of NRS 485.3091, and several weeks after a jury returned a verdict against Plaintiff in the amount of $1,955,811.22, STATE FARM sent a letter to Mr. Schupp. In that letter, State Farm stated "In the correspondence sent to you on October 27, 2016, State Farm advised that Ms. Winn was not covered under the subject policy.  However, based on a mistaken interpretation of NRS 485.3091, State Farm erroneously believed that it was still legally required to extend the (at the time) statutorily mandated liability limits of $15,000 "per person" and $30,000 "per accident."  As such, State Farm offered those amounts in order to settle your clients' claims even though MS. Winn did not qualify for coverage under the policy in the first place, the requirements of NRS 485.3091 do not apply, and State Farm is not required to extend the statutorily required limits…As such, State Farm is under no obligation to pay the 15/30 (sic) limits as you have demanded."

## III.

### FIRST CLAIM FOR RELIEF

### (BREACH OF INSURANCE CONTRACTS BY SHELTER AND STATE FARM)

41. Plaintiff repeats and re-alleges each and every statement set forth in the above Paragraphs as though each were set forth herein verbatim.

42. Plaintiff has performed all conditions precedent, covenants, and promises required by Plaintiff to be performed in accordance with the terms and conditions of the insurance policies so as to entitle Plaintiff to the insurance benefits of the policies.

43. SHELTER'S failure to inform Plaintiff, pursuant to *Allstate v. Miller*, 125 Nev. 300, 212 P.3d 318 (2009), that all claims under her bodily injury policies of insurance could be settled

11

for an additional contribution of $20,000 by Plaintiff, which she would have paid had she been so informed by SHELTER, thus reducing her financial risk and shortening the time that the matter was subject to litigation and appeals, was a material breach of the insurance contracts and Nevada law.

44. As a result of SHELTER'S breach of contract, Plaintiff has incurred compensatory or expectation damages, as well as emotional distress that includes, but is not limited to, chagrin, worry, and disappointment.

45. On October 27, 2016, STATE FARM sent a letter to Mr. Schupp.  In that letter, STATE FARM stated:  "…in compliance with Nevada's absolute liability statute, NRS 485.3091, State Farm extends a settlement offer of $15,000 each for Brian Choiniere and Christine Weir's bodily injury claims."  On April 27, 2017, STATE FARM extended a settlement offer of $15,000 each for Brian Choiniere and Christine Weir's bodily injury claims, but required a release to be executed in exchange for the receipt of the funds.  STATE FARM failed to advise Plaintiff of the conditions of this offer.  On April 28, 2022, nearly six years after that offer was made, STATE FARM sent a letter to Mr. Schupp and revoked the offers STATE FARM made on October 27, 2016.

46. STATE FARM'S failure to tender the policy limits as demanded and/or fairly evaluate STATE FARM claim number 28-985F-624 under policy number 086384628C, which lead to the filing of case number A-17-758089-C, and STATE FARM'S failure to inform Plaintiff, pursuant to *Allstate v. Miller*, 125 Nev. 300, 212 P.3d 318 (2009), that all claims under her bodily injury policies of insurance could be settled for an additional contribution of $20,000 by Plaintiff, which she would have paid had she been so informed by STATE FARM, thus reducing her financial risk and shortening the time that the matter was subject to litigation and appeals, was a material breach of the insurance contracts and Nevada law.

47. As a result of STATE FARM'S breach of contract, Plaintiff has incurred compensatory or expectation damages, as well as emotional distress that includes, but is not limited to, chagrin,

VANNAH & VANNAH
400 South Seventh St., 4th Floor· Las Vegas, Nevada 89101
Telephone (702) 369-4161   Facsimile (702) 369-0104

worry, and disappointment.

48. As a result of Defendants' respective breach of contract, Plaintiff has incurred foreseeable consequential and incidental damages.

## IV.

### SECOND CLAIM FOR RELIEF

### (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING—BAD FAITH)

49. Plaintiff repeats and re-alleges each and every statement set forth in the above Paragraphs as though each were set forth herein verbatim.

50. Nevada law recognizes in every contract a covenant of good faith and fair dealing, which is a promise that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.

51. STATE FARM breached this covenant of good faith and fair dealing by:  a.) their failure to tender the policy limits as demanded pursuant to STATE FARM claim number 28-985F-624 under policy number 086384628C, which lead to the filing of case number A-17-758089-C; b.) their failure to inform Plaintiff, pursuant to *Allstate v. Miller*, 125 Nev. 300, 212 P.3d 318 (2009), that all claims under her bodily injury policies of insurance could be settled for an additional contribution of $20,000 by Plaintiff, which she would have paid had she been so informed by STATE FARM; c.) offering to pay policy limits of 15/30 in October of 2016, in accordance to a legal responsibility to do so, then abruptly changing their position and refused to pay the 15/30 policy limits after a jury had returned a verdict against Plaintiff in the amount of $1,955,811.22; d.) denying liability in October of 2016 by claiming Winn was a non-permissive driver, then acknowledging, in compliance with NRS 484.3019, it had an obligation to tender the minimal liability limits of $15,000/$30,000; e.) failing to unconditionally tender the aforementioned policy limits and instead demanding a full release of liability, a condition that

13

STATE FARM knew the Plaintiffs in the underlying case had specifically declined to provide; and, f.) failing to reduce the judgment against Plaintiff by the $30,000 that STATE FARM had previously agreed to pay in October of 2016.

52. STATE FARM'S conduct as alleged in this complaint was done so in the absence of a reasonable basis for denying such benefits and rights under the policy and Nevada law, and was done with STATE FARM'S knowledge and/or reckless disregard of the lack of a reasonable basis for denying the claim.

53. As a result of STATE FARM'S breach of the covenant of good faith and fair dealing, Plaintiff has incurred compensatory and expectation damages, as well as emotional distress that includes, but is not limited to, chagrin, worry, and disappointment.

54. STATE FARM'S willful, wanton, malicious, reckless, oppressive, and/or fraudulent breach of the covenant of good faith and fair dealing entitle Plaintiff to punitive damages.

55. SHELTER breached this covenant of good faith and fair dealing by their failure to fairly evaluate SHELTER claim number AT0000001726369 under policy number 27-1-3875917-2, which lead to the filing of case number A-17-758089-C, and SHELTER'S failure to inform Plaintiff, pursuant to *Allstate v. Miller*, 125 Nev. 300, 212 P.3d 318 (2009), that all claims under her bodily injury policies of insurance could be settled for an additional contribution of $20,000 by Plaintiff, which she would have paid had she been so informed by SHELTER.

56. SHELTER'S conduct as alleged in this complaint was done so in the absence of a reasonable basis for denying such benefits and rights under the policy and Nevada law, and was done with SHELTER'S knowledge and/or reckless disregard of the lack of a reasonable basis for their handling of the claim.

57. As a result of SHELTER'S breach of the covenant of good faith and fair dealing, Plaintiff has incurred compensatory and expectation damages, as well as emotional distress that includes, but is not limited to, chagrin, worry, and disappointment.

14

58. SHELTER'S willful, wanton, malicious, reckless, oppressive, and/or fraudulent breach of the covenant of good faith and fair dealing entitle Plaintiff to punitive damages.

**V.**

**THIRD CLAIM FOR RELIEF**

**(UNFAIR CLAIMS PRACTICES—NRS 686A.310(1)(b); (2))**

59. Plaintiff repeats and re-alleges each and every statement set forth in the above Paragraphs as though each were set forth herein verbatim.

60. In failing to communicate with Plaintiff that the underlying claims ultimately set forth in case number A-17-758089-C could resolve with a monetary contribution from Plaintiff, STATE FARM failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies, as prohibited by NRS 686A.310(1)(b).

61. Pursuant to NRS 686A.310(2), STATE FARM is liable for any damages sustained by Plaintiff as a result of its violation of the above unfair claims practices, including damages for benefits denied under the insurance policy, consequential damages, emotional distress, and attorney's fees. Furthermore, Plaintiff is entitled to punitive damages as the above violations were done with a conscious disregard for the rights of Plaintiff.

62. In failing to communicate with Plaintiff that the underlying claims ultimately set forth in case number A-17-758089-C could resolve with a monetary contribution from Plaintiff, SHELTER failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies, as prohibited by NRS 686A.310(1)(b).

63. Pursuant to NRS 686A.310(2), SHELTER is liable for any damages sustained by Plaintiff as a result of its violation of the above unfair claims practices, including damages for benefits denied under the insurance policy, consequential damages, emotional distress, and attorney's fees. Furthermore, Plaintiff is entitled to punitive damages as the above violations were done with a conscious disregard for the rights of Plaintiff.

15

**VI.**

**FOURTH CLAIM FOR RELIEF**

**(PROMISSORY ESTOPPEL—STATE FARM)**

64. Plaintiff repeats and re-alleges each and every statement set forth in the above Paragraphs as though each were set forth herein verbatim.

65. Plaintiff learned about, and relied upon, STATE FARM'S recognition of a legal responsibility to pay, as well as STATE FARM'S promise to pay, the minimum policy limits of 15/30, after the complaint was filed in case number A-17-758089-C.

66. Plaintiff further relied upon STATE FARM'S ongoing position through the trial in case number A-17-758089-C, that it would pay the legally mandated minimum policy limits of 15/30.

67. It was only after judgment was entered in case number A-17-758089-C that Plaintiff was told by STATE FARM that they were refusing to pay any amount, including the $30,000 they'd previously agreed to pay, to reduce the judgment against her.

68. As a result of Plaintiff's reliance on the positions of STATE FARM regarding its recognition of a legal responsibility to pay, as well as STATE FARM'S promise to pay, the statutorily mandated minimum policy limits of 15/30, then changing its position after an adverse judgment was entered against Plaintiff, Plaintiff has incurred compensatory or expectation damages, as well as emotional distress that includes, but is not limited to, chagrin, worry, and disappointment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment against Defendants as follows:

1.      General and special damages in excess of $15,000, according to proof at trial;

2.      Compensatory or expectation damages for denied policy benefits;

3.      Consequential damages, including emotional distress and attorney's fees, in excess of $15,000;

16

4.     Punitive damages against Defendants in excess of $15,000;

5.     Costs of suit; and,

6.     Such other and further relief as this Court deems appropriate.

DATED this 27th day of July, 2022.

VANNAH & VANNAH

/s/ Robert D. Vannah

ROBERT D. VANNAH, ESQ.
Nevada State Bar No. 002503
JOHN B. GREENE, ESQ.
Nevada State Bar No. 004279
400 S. Seventh Street, 4th Floor
Las Vegas, Nevada 89101
*Attorney for Plaintiff*

VANNAH & VANNAH
400 South Seventh St., 4th Floor·Las Vegas, Nevada 89101
Telephone (702) 369-4161   Facsimile (702) 369-0104

17